In re H. Russell PACE, dba
Seward's Folly, Debtor.

H. Russell PACE, John E. Havelock and
John R. Strachan, Appellants,

v.

Kenneth W. BATTLEY,
Trustee, Appellee.

BAP No. AK–91–2105–AsJV.

Bankruptcy No. 3–86–00572–HAR.

Adv. No. 3–86–00572–001.

United States Bankruptcy Appellate Panel,
Ninth Circuit.

Argued and Submitted June 23, 1992.

Decided Sept. 10, 1992.

Thomas J. Yerbich, Anchorage, Alaska, for H. Russell Pace.

William D. Artus, Anchorage, Alaska, for Kenneth W. Battley, Trustee.

Before ASHLAND, JONES and VOLINN, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

H. Russell Pace, John E. Havelock, and John Strachan appeal an order of the bankruptcy court awarding Kenneth W. Battley, trustee of the bankruptcy estate, $150,000 constituting one half the settlement proceeds from a malpractice action between the debtor H. Russell Pace and debtor's former attorneys, 132 B.R. 644 (Bankr.D.Alaska 1991). We affirm.

## STATEMENT OF THE FACTS

In September of 1984, H. Russell Pace and his former wife sold their interest in a night club to New Pines Corp., Wayne Bond and Fred McCorriston (collectively referred to as New Pines). Pace employed Boyko & Davis as their attorneys for the sale. The promissory note executed in connection with the sale was secured by two liquor licenses with a combined value of $360,000. Although the liquor licenses served as collateral for the note, no UCC–1 financing statement was filed.

On September 24, 1986, Pace filed a Chapter 11 petition that was converted to a Chapter 7 in December 1986. Pace filed schedules of assets and liabilities in his bankruptcy reflecting the New Pines promissory note as an asset of the estate and listing the liquor licenses as exempt assets.

On March 19, 1986, New Pines filed a Chapter 11 bankruptcy petition, which was later converted to a Chapter 7 bankruptcy. In May of 1987, the liquor licenses were sold in the New Pines bankruptcy. Pace's interest in the licenses was deemed worthless because of the failure to perfect his security interest in the same and Pace received no money for the licenses.

In October of 1987, Pace brought a malpractice action against his former attor-

neys for failure to file a UCC–1 financing statement to perfect Pace's interest in the liquor licenses. Upon learning of the malpractice claim, the trustee in Pace's bankruptcy included in the trustee's interim report filed on October 30, 1987, the "suit against attorney" as an asset to be liquidated. The debtor's bankruptcy schedules were not amended to reflect the malpractice law suit.

In February of 1989, the trustee in the Pace bankruptcy closed the estate and filed a general motion for abandonment seeking to abandon all property of the estate to Pace, which was not sold, abandoned, or allowed as exempt. The court granted the motion and entered the order in September of 1989. The original abandonment order provided for the abandonment of "property of the estate," and was later amended, pursuant to a motion to amend, to include only "scheduled property of the estate."

In January of 1991, the trustee filed a motion to reopen Pace's bankruptcy case to administer the malpractice claim which was an unscheduled asset. The case was reopened and Kenneth Battley was appointed the successor trustee.

In February of 1991, the malpractice claim was settled for $300,000. Battley, as successor trustee in the Pace bankruptcy, agreed with the trustee for the bankruptcy estate of Pace's former wife to divide the settlement proceeds evenly, $150,000 to Battley and $150,000 to the estate of Pace's former wife.

Battley subsequently brought an action against Pace and his attorneys to recover the proceeds of the malpractice settlement. Pace defended the suit by arguing that the abandonment of the New Pines promissory note constituted abandonment of the attorney malpractice claim. The bankruptcy court found for the trustee and awarded Battley $150,000 of the settlement proceeds which were placed in an escrow account pending the bankruptcy court's decision. Pace timely appealed the court's order.

## STATEMENT OF THE ISSUE

Whether the bankruptcy court erred in finding that abandonment of the New Pines promissory note by the trustee did not constitute abandonment of the attorney malpractice claim against debtor's former attorneys.

## STANDARD OF REVIEW

Findings of fact are reviewed for clear error; conclusions of law are reviewed de novo. *In re Taylor*, 884 F.2d 478, 480 (9th Cir.1989); *In re Probasco*, 839 F.2d 1352, 1353–54 (9th Cir.1988).

## DISCUSSION

Section 554 of the Bankruptcy Code provides for abandonment of property of the estate during the case through court order directing abandonment, *see*, 11 U.S.C. § 554(a) and (b), or abandonment by operation of law once the case is closed, *see*, 11 U.S.C. § 554(c), *In re Lange*, 120 B.R. 132, 135 n. 3 (9th Cir.BAP 1990).

■ Abandonment pursuant to § 554(a) or (b), according to Federal Rule of Bankruptcy Procedure 6007, requires notice, a hearing, and an order of the court authorizing the abandonment. *In re Reed*, 940 F.2d 1317, 1321 (9th Cir.1991); *In re Hyman*, 123 B.R. 342, 348 (9th Cir.BAP 1991).

■ Abandonment pursuant to § 554(c) requires that the property to be abandoned is properly scheduled under § 521(*l*). *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir.1991) (unless formally scheduled, property is not abandoned at the close of the estate, even if the trustee knew of the existence of the property when the case was closed); *In re Harris*, 32 B.R. 125, 127 (Bankr.S.D.Fla. 1983) (property not scheduled was not deemed abandoned and remained property of the estate); *In re Medley*, 29 B.R. 84, 86–87 (Bankr.M.D.Tenn.1983) (an unscheduled asset was not deemed abandoned and trustee could reopen case to administer the asset to creditors).

Here, the malpractice claim against the debtor's former attorneys was not abandoned pursuant to § 554(a) or (b) because there was no notice, hearing, or order of the court directing abandonment. Further-

more, the malpractice claim was not listed in the debtor's schedules of assets and liabilities, as required by § 554(c). However, appellants contend that the malpractice claim was "so inextricably intertwined" with the promissory note executed in, connection with the sale of the two liquor licenses that abandonment of the note constituted abandonment of the malpractice claim. They argue that to have a cause of action for professional negligence one has to own the interest that was lost or damaged. In other words, the estate did not have a malpractice claim once the trustee abandoned the interest in the promissory note.

The appellants cite no cases in which two assets were "so inextricably intertwined" that abandonment of one constituted abandonment of the other. However, the bankruptcy court below relied on a case in which a similar argument was raised by the appellant and failed. *See, In re Woodson*, 839 F.2d 610 (9th Cir.1988). The appellants are correct that *Woodson* is factually distinguishable from this case. However, the rationale espoused in *Woodson* is applicable here.

*Woodson* concerned exemption of life insurance proceeds pursuant to § 522 of the Bankruptcy Code. Appellant therein exempted his life insurance policy and argued that the proceeds therefrom were also exempt, both constituting one asset. The *Woodson* court drew a distinction between the policy and the proceeds; the former being an ownership interest exempt under § 522(d)(7), the latter being a beneficial interest of the debtor under § 541(a)(5).

The court stated:

[The] right to maintain the policy is of value to the debtor only; it is not capable of sale or transfer and is therefore of little use to the estate. Policy proceeds, on the other hand, are fully liquidated and therefore readily usable by the estate to pay creditors. It seems perfectly logical for the bankruptcy laws to protect an unmatured policy while subjecting the proceeds of a matured policy to the reach of creditors. The two assets

are treated differently because they in fact *are* different.

*Woodson*, 839 F.2d at 618–19 (emphasis in original).

■ Here, the promissory note is clearly different from the malpractice action. The note was of no value to the estate because the security interest in the same was never perfected. Therefore, abandonment of the asset was justified. However, the malpractice claim is fully liquidated through the settlement and usable by the estate for creditors. We find that abandonment of the promissory note did not extinguish the estate's malpractice claim against the debtor's former attorneys.

■ The appellants assert that for the trustee to hold the malpractice claim on behalf of the estate, four state law elements of a professional malpractice claim must exist. First, there must be a duty; second, a breach of the duty; third, a proximate causal connection between the negligent conduct and the resulting injury; and forth, actual loss or damage resulting from the professional's negligence. *See, Thomas v. Cleary*, 768 P.2d 1090, 1092 (Alaska 1989).

The appellants contend that the fourth element, actual damage, is not present because the trustee did not own "the interest that was invaded or damaged," in this case, the promissory note. As discussed above, we find that abandonment of the promissory note did not constitute abandonment of the malpractice claim. The professional malpractice claim exists independently of possession of the promissory note. The fact that the estate abandoned possession of the promissory note does not negate the fact that the attorneys' malpractice caused the note to be worthless to the estate based upon the failure to perfect a security interest in the liquor licenses.

■ Appellants raise two sub-issues which this panel finds immaterial. The bankruptcy court stated that a formal amendment to the schedules was required to include the malpractice claim among the assets to be abandoned. Appellants contend that the bankruptcy court erred in

drawing this conclusion because the debtor was not required to amend his schedules to include the malpractice claim. It is of no consequence who failed to include the malpractice claim in the schedules or even whether the malpractice claim should have been scheduled. If the claim had been scheduled, it would have been abandoned according to the bankruptcy court's amended abandonment order authorizing abandonment of all scheduled property of the estate. The fact that the malpractice claim was not scheduled excluded it from the language of the court's order and the claim remained property of the estate in accordance with § 554(d).

 Appellants further argue that the trustee's knowledge of the malpractice claim, as reflected in the trustee's interim report filed in October of 1987, was sufficient notice to creditors of the intent to abandon the claim. Abandonment requires affirmative action by the trustee or some other evidence of the intent to abandon the asset. *In re Hyman,* 123 B.R. 342, 348 (9th Cir.BAP 1991); *In re Berg,* 45 B.R. 899 (9th Cir.BAP 1984). If the property is not properly scheduled, it is not sufficient that the trustee knew of the property's existence at the time that the case was closed. *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 526 (8th Cir. 1991).

It is questionable whether the trustee's knowledge of the malpractice claim is attributable to the creditors. However, if so, it does not follow that the creditors were aware of the intent to abandon the asset. Moreover, assuming sufficient notice to creditors, abandonment pursuant to § 544(a) or (b) further requires a hearing and order of the court authorizing the abandonment.

## CONCLUSION

For the above reasons the bankruptcy court's order awarding the trustee one half the settlement proceeds of the malpractice action is affirmed.